51 So.2d 697

### KENDRICK et al. v. BOYD.

6 Div. 168.

Court of Appeals of Alabama.

Feb. 7, 1951.

Rehearing Denied March 6, 1951.

Gibson & Hewitt, of Birmingham, for appellee.

Maurice F. Bishop and John S. Foster, of Birmingham, for appellants.

CARR, Presiding Judge.

The nature of this appeal is correctly stated in appellants' brief: "This is an appeal by the appellants, W. D. Kendrick, Earl Bruner, and Charles E. Harrison, all as members of the County Commission of Jefferson County, Alabama, from a judgment of the Circuit Court of the Tenth Judicial Circuit of Alabama ordering that

a peremptory writ of mandamus be issued from said Circuit Court directed to the aforenamed appellants commanding them, and each of them, to forthwith authorize and direct the County Treasurer of Jefferson County, Alabama, to pay G. H. Boyd, the appellee, 'the sum of Eight Hundred Forty and no/100 Dollars ($840.00), same being the compensation provided by Act Number 424, Regular Session of the Legislature of 1949, for services of said Petitioner as provided in said Statute * * *'."

The question of critical concern is whether or not the act upon which the proceeding is predicated is constitutional.

Under the authority of Section 87, Title 13, Code 1940, we transferred the cause to the Supreme Court. The constitutionality of the statute was upheld, and the case was then retransferred to this court for further consideration and a final disposition of the cause.

In a very able opinion on the constitutional question, Justice Simpson wrote [51 So.2d 696]:

"We will limit consideration * * * to that specific question involved, viz., whether or not the aforesaid statute violates that provision of § 45 which provides that 'Each law shall contain but one subject, which shall be clearly expressed in its title.' We hold that it does not.

"The act under review is a rewrite of the absentee ballot law of Alabama, its title being an act 'To provide for absentee voting in primary, general, special, and municipal elections: Prescribing penalties for violations of the Act and repealing conflicting laws.' The act designates the register in chancery of each county in which an election is held (or other person designated to serve in his stead if the register be disqualified) as the official, agent or person to superintend and manage the absentee balloting. Section 17 provides for pay for services under the act and the specific challenge is that § 45 is violated by failure of the title to make reference to such.

"To be sure, the question posed could be a somewhat debatable one were we to enforce with hypercritical exactness the said constitutional prescription; but the rule is to the contrary. The court is committed to the principle that this requirement of the Constitution is 'not to be exactingly enforced or in such manner as to cripple legislation', but should be accorded a liberal interpretation. Johnson v. Robinson, 238 Ala. 568, 192 So. 412; Ballentyne v. Wickersham, 75 Ala. 533.

"Speaking to the general theme of liberality of construction and the avoidance of hypercritical criticism as regards the title of an act, the following observation from Ex parte Pollard, 40 Ala. 77, was approved in the case of Roden v. Griffin, 179 Ala. 633, 637, 60 So. 925, 926, which bears on the proposition: ' * * * "The question must always be whether taking from the title the subject, we can find anything in the bill which cannot be referred to that subject. If we do, the law embraces a subject not described in the title. But this conclusion should never be attained, except by argument characterized by liberality of construction and freedom from all nice verbal criticism." '

"Then, too, the question of the unconstitutionality of an act must be more than fairly debatable before the court is authorized to strike it down. To strike an act down, the court must be convinced of its unconstitutionality beyond a reasonable doubt. 6 Alabama Digest, Consitutional Law, ⬤➡ 48.

"Keeping in mind these well-known canons of construction, we think it clear the challenge to the act is untenable. The constitutional requirement that the subject of the act be clearly expressed in its title is held to be satisfied if the title sufficiently discloses the subject of the act so as to apprise the legislature and the public of the matter to be dealt with. Newton v. City of Tuscaloosa, 251 Ala. 209, 36 So. 2d 487; State ex rel. Harrington v. Randle, 250 Ala. 472, 35 So.2d 84; Fuqua v. City of Mobile, 219 Ala. 1, 121 So. 696.

"In line with this premise, the law has become established that when there is a fair expression of the general subject of the act in its title, all matters reasonably related to it, including all necessary agencies or instrumentalities which should fa-

cilitate the act's execution, are proper to be included as being cognate and germane to the title. We had occasion to deal with this specific question at some length in Newton v. City of Tuscaloosa, supra, and with reference thereto pointed out, *inter alia*, (1) the liberal interpretation rule to be accorded this constitutional mandate; (2) that the subject of the act may be expressed in general terms ·and when so, everything subsumed under the general thought to make it a complete act, if cognate and germane thereto, is regarded as included in and authorized by it; (3) generality or comprehensiveness of the subject of the act is not a violation of the constitutional provision requiring that an act shall contain but one subject, which shall be clearly expressed in the title, a broad comprehensive subject justifying the inclusion of any matter except that which is incongruous or unconnected with the subject, provided the title is not uncertain or misleading; (4) the title of an act need not be an index to it, nor need it catalogue all powers intended to be bestowed.

"A good statement of the applicable rule is also to be found in Dearborn v. Johnson, 234 Ala. 84, 88, 173 So. 864, 867, where the court, speaking through Justice Gardner, observed: '* * * When the subject is expressed in general terms, everything which is necessary to make a complete enactment in regard to it, or which results as a complement of the thought contained in the general expression, is included in and authorized by it. * * *'

"Other cases, among many which could be cited of like import, are State ex rel. Harrington v. Randle, supra; Woco-Pep Co. v. Butler, 225 Ala. 256, 142 So. 509; Chapman v. Railway Fuel Co., 212 Ala. 106, 101 So. 879; Lindsay v. United States Savings & Loan Co., 120 Ala. 156, 24 So. 171, 42 L.R.A. 783; Ballentyne v. Wickersham, supra.

"It is reasonably plain that every section, clause and paragraph of Act 424, including said § 17, is cognate and germane to the general subject expressed in the title, viz., 'absentee voting,' and we think the title sufficiently clear to apprise the legislature and the public of the matter therein to be dealt with. Section 17, like the other provisions of the act, deals specifically with that subject. It must be conceded that somewhere in the act the duty and responsibility of executing it must be placed upon some individual, board or official. The title naturally suggests this and anyone interested or concerned would naturally look to the body of the act to ascertain the method to be pursued and if so, would find that the person so designated was the register. A concomitant of this thought is, of course, that since the duties under the act would require the time and labor of the person so designated, and since the duties imposed on the register are new, additional, and foreign to those of his office, the legislature might be expected to provide compensation for such services, and it was but proper that the act did so provide. That is all there is to § 17 and we cannot hold to the view that it runs afoul of the stated constitutional mandate. Jackson v. Sherrod, 207 Ala. 245, 92 So. 481; Roden v. Griffin, supra; Herrmann v. Mobile County, 202 Ala. 274, 80 So. 112, and cases cited."

We will respond to the questions which remain for our review.

█ The writ of mandamus was the appropriate remedy. Earp v. Bishop, 222 Ala. 235, 132 So. 36; Hamilton, Tax. Col. v. Edmundson, 235 Ala. 97, 177 So. 743; 55 C.J.S., Mandamus, § 127, page 214; Board of Revenue of Jefferson County v. City of Birmingham, 205 Ala. 320, 88 So. 18.

Appellants urge that the petitioner's compensation as register is fixed by law on a salary basis, and on this account he is not entitled to extra pay for the services rendered under the provisions of Section 17 of the act in question.

This brings under review a construction of Section 139, Title 62, Code 1940, and Section 16(1), Title 1, 1949 Cumulative Pocket Part, Code 1940.

The Jefferson County salary amendment to the Constitution of 1901 became a part of the Constitution in 1912. Amendment No. 2. One effect of this amendment was to exempt the officers of Jefferson County from the limitations prescribed by Section 96 of the Constitution of 1901.

The yoke having been lifted, the legislature passed a local bill, Local Acts 1915, p. 374.

Again in 1931 the legislature passed an act relating to the same subject matter which had application only to Jefferson County. General Acts 1931, p. 441, Title 62, Section 139, Code 1940.

In 1943 a similar law was passed so as to affect all counties in the State having a population of one hundred and forty thousand or more. Gen.Acts 1943, p. 418.

Unquestionably the historical background of the laws relating to compensation for Jefferson County officials evinces a clear intent on the part of the legislature to remove inequities incident to the "fee system" in our larger counties. We entertain the view that this effort should not be hindered, and that unless a clear intent appears to the contrary the policy should be viewed with favor.

When the legislature passed Act 424, *supra*, it had in mind, of course, the existence of the laws relating to salary compensation for officials in certain counties. It was within its province to provide exceptions for pay of registers in these counties. It did not. Instead, the legislature by the act imposed on the officer additional duties "foreign to those of his office."

■ It is axiomatic that a construction of a statute is correct when the intent of the enactors is given effect. "The intent of the law-makers is the law."

■ We think that the answer to the instant question is that the legislature may award a salaried public official extra compensation by imposing on the incumbent new and additional duties which are foreign to his office.

In the case of Tayoe v. Davis, 212 Ala. 282, 102 So. 433, 437, 40 A.L.R. 1052,

Justice Bouldin had this to say: "We may say that while a public officer takes his office cum onere, and is required to perform the duties from time to time prescribed by law, there is inherent justice in granting compensation for the increased labor and responsibility imposed by new legislation. The just legislator may be rather disposed to create a new office, than to impose unexpected new burdens on an existing officer without compensation. Nor do we think any sound objection obtains to conferring new duties, with compensation, upon the officer who, by reason of knowledge and experience, is best fitted to the new task. Fitness for the new duties growing out of experience in former official labors may furnish the opportunity to get efficient service at minimum expense to the state."

See also, Jackson v. Sherrod, 207 Ala. 245, 92 So. 481; State ex rel. Ward v. Henry, 224 Ala. 224, 139 So. 278; Marion County v. Middleton, 246 Ala. 464, 21 So. 2d 312; 67 C.J.S., Officers, § 95(g), page 353.

The judgment of the court below is due to be affirmed. It is so ordered.

Affirmed.